·(7 Misc. Rep. 513.)

### DEARBORN v. A. S. HOLMES REFINING CO. et al.

(Superior Court of Buffalo, Trial Term. March, 1894.)

TRUSTS—PURSUING TRUST FUNDS.

Where the amount of a claim under an employer's liability insurance policy for injuries to an employe is sent by the insurance company to the agent through whom the employer obtained the policy, and the agent, with the consent of the employer, applies the same to a claim held by him against the employer, the injured employe may recover such amount, though he had executed a receipt for the amount, and given a release of all claims on account of the accident, as such papers were required by the insurance company before payment of claims.

Action by Edwin J. Dearborn against the A. S. Holmes Refining Company and others to recover damages for personal injuries. There was a verdict for plaintiff, and defendants move for a new trial. Denied.

E. G. Mansfield, for plaintiff.
C. M. Bushnell, for defendants.

HATCH, J. The defendant refining company held a policy of indemnity issued by the Standard Life & Accident Insurance Company of Detroit. This policy was received through the defendants Armstrong, who were the agents at Buffalo of the insurance company. The premium due upon the policy was never paid by the refining company, but was accounted for to the insurance company

by the Armstrongs, who thereafter held the claim for such premiums as a debt due to them from the refining company. The provision in the policy, so far as important here, reads: "The company further promises, in the event of the death or disablement of any employé through the effect of purely accidental injuries, * * * to pay to the assured, for the benefit of whom it may concern," a certain specified sum, dependent upon the character and length of disability, the amount of wages received by the injured employé, and for reasonable medical or surgical services. Plaintiff was an employé of the assured, and received, accidentally, a severe injury requiring medical attendance. The refining company, in due course, made out and delivered to the insurance company a notice of the injury and the amount claimed thereunder. It also procured from plaintiff and from the physician a receipt for the amount of their respective claims, and from the former a release of all liability on account of the accident. The refining company paid nothing for the execution of the receipts or the release, but agreed to pay the money over to plaintiff when received. The amount of the claim was duly passed by the insurance company, and sent to the defendants Armstrong for payment. Instead of paying the money over, the Armstrongs, by arrangement with the refining company, applied it upon the latter's indebtedness to them.

I think, upon these facts, that plaintiff is entitled to recover. The money, when received by the Armstrongs, was not their money, and it certainly was not the money of the refining company. How, then, could the latter pay its personal debt with money which did not belong to it, and which it only had the power to receive as trustee of another? The money was received by the Armstrongs with full knowledge of the trust impressed upon it in favor of plaintiff, both by the terms of the policy and the direction of the insurance company. Upon what principle of law can it be claimed that with this knowledge they could agree with the other trustee, and retain the money in payment of their existing debt? If such results can be reached, the position of a cestui que trust will be quite precarious. It is said that plaintiff had acknowledged receipt of the money from the refining company, and had executed the release, upon which the Armstrongs might rely. These were papers which the insurance company required, and were executed for the purpose of obtaining the money from it. The Armstrongs had no right to rely thereon. Plaintiff was not concluded by either paper from showing that he had not been paid, and the Armstrongs were bound by what the facts really were, not what they supposed them to be, so long as plaintiff had done nothing to mislead them, and they had not parted with present value. They were the mere conduit through which the money passed, and when they chose to divert it they must not only show a supposed right, but they must justify it by existing facts, showing a clear right to retain it. These principles find clear expression in Wright v. Cabot, 89 N. Y. 574. The motion for a new trial is denied, and judgment is ordered for plaintiff upon the verdict, with costs.